IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SHERRY A. QUERIN, | CASE NO. 3:20-CV-01760-JJH |
| Plaintiff, | JUDGE JEFFREY J. HELMICK |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION |
| Defendant. | |

### INTRODUCTION

Plaintiff Sherry A. Querin filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB"). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On August 11, 2020, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a report and recommendation, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 26, 2021). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

### PROCEDURAL BACKGROUND

Ms. Querin filed for DIB on August 10, 2020, alleging a disability onset date of July 30, 2018. (Tr. 198). Her claims were denied initially and on reconsideration. (Tr. 75-93, 95-111). She then requested a hearing before an administrative law judge. (Tr. 134-35). Ms. Querin (represented

1

by a non-attorney representative) and a vocational expert ("VE") testified at a hearing before the ALJ on November 5, 2019. (Tr. 38-72). On January 2, 2020, the ALJ found Ms. Querin not disabled in a written decision. (Tr. 18-37). The Appeals Council denied Ms. Querin's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-7; *see also* 20 C.F.R. §§ 404.955, 404.981). Ms. Querin timely filed this action on August 10, 2020. (ECF #1).

FACTUAL BACKGROUND

I. PERSONAL AND VOCATIONAL EVIDENCE

Ms. Querin was 53 years old on her alleged onset date, and 54 years old at the time of the administrative hearing. (Tr. 75). Ms. Querin has an Associate's degree in Applied Science. (Tr. 43). In the past, Ms. Querin has been employed as an order clerk (performed at the sedentary exertion level) and a motor vehicle assembler (performed at the medium exertion level). (Tr. 61).

II. ADMINISTRATIVE HEARING

The following summarizes the testimony of Ms. Querin and VE John N. Stokes, presented during the hearing before the ALJ.

Ms. Querin has an Associate's degree in Applied Science, majoring in Health Information Technology, a two-year degree. (Tr. 43). Ms. Querin's husband is the family's only source of income. (Tr. 42). Their household income is just above the qualifying threshold for Medicaid insurance, so Ms. Querin last had health insurance when she was employed with the Home Shopping Network (HSN) in August 2017. (Tr. 50). Ms. Querin stopped working at HSN because sitting and standing for too long causes low back and leg pain and the position was mentally taxing; additionally, Ms. Querin received abusive calls from customers. (Tr. 46).

Ms. Querin testified she is unable to work because she has overhead lifting and repetitive motion restrictions due to a shoulder surgery. (Tr. 47). Ms. Querin has pain in her back that travels down her leg and into her inner thigh. (*Id.*). Ms. Querin takes Aleve or prescription medications for the pain. (*Id.*). Walking also helps but she cannot walk for long, so she must balance the time she spends sitting and standing. (*Id.*). She can walk for about ten or fifteen minutes before the pain is such that Ms. Querin must sit down. (Tr. 49). She can stand for about fifteen minutes and sit for about fifteen to twenty minutes at a time. (Tr. 56). When she stands for too long, Ms. Querin sits to alleviate the pain. (*Id.*). When she sits for too long, Ms. Querin must get up, walk around, and rub the afflicted area. (Tr. 56-57). Ms. Querin testified that sitting, standing, or lying down for too long are excruciating. (Tr. 55). Ms. Querin has difficulty navigating stairs because her leg sometimes gives out. (Tr. 42). Ms. Querin testified she attended physical therapy but not having health insurance makes it difficult to engage in treatment. (Tr. 49).

Ms. Querin suffers from mental health impairments, including post-traumatic stress disorder stemming from an abusive childhood. (Tr. 48). Out of necessity, Ms. Querin has worked despite her PTSD symptoms. (*Id.*). Ms. Querin explained she is no longer able to deal with situations that trigger her PTSD. (Tr. 49). It causes panic attacks, she gets sweaty, has nausea, and feels as though she cannot breathe. (Tr. 58). She has difficulty being in large groups of people. (*Id.*). Ms. Querin's mental health medications cause grogginess. (Tr. 47). Ms. Querin also suffers from sleep disturbances. (Tr. 59). She finds it difficult to lie in bed, so she lies in a recliner. (*Id.*). She is up and down five to six times nightly. (*Id.*). Ms. Querin often wakes up from leg pain and nightmares. (*Id.*).

On a typical day, Ms. Querin tries to clean her house as best she can. (Tr. 51). She does laundry and dishes, but she takes breaks as needed. (*Id.*). She cooks and does the grocery shopping. (*Id.*). Her husband helps her often with sweeping and mopping. (*Id.*).

Ms. Querin has a driver's license and is able to drive but has problems with her legs. (Tr. 44). Sometimes, Ms. Querin must use her hands to lift her right leg into the car. (*Id.*). Using her right leg to push the brake and gas pedals is difficult. (*Id.*). Ms. Querin does not drive at night because she cannot see well. (*Id.*).

Ms. Querin can manage her own hygiene, including taking a shower, brushing her teeth, and brushing her hair. (*Id.*). Ms. Querin added that she only showers when her husband is home because she is afraid of falling when her legs get shaky, as when she shaves them. (Tr. 45).

Ms. Querin does not socialize often. She visits her mother once or twice a month to sit and talk. (Tr. 52). Ms. Querin enjoys diamond painting, an art technique similar to paint-by-numbers. (*Id.*). This activity helps her relax and maintain focus. (Tr. 54). She engages in the activity when she feels stressed and anxious or feels a panic attack is imminent. (Tr. 57). She must limit herself to fifteen or twenty minutes of diamond painting or take frequent breaks because she will have trouble gripping the necessary instruments. (*Id.*).

The VE then testified. The ALJ proposed the following hypothetical individual and asked if such an individual could perform Ms. Querin's past relevant work: an individual of Ms. Querin's age, education, an relevant vocational background, with a residual functional capacity to perform medium work, except she can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, and crouch but never crawl; can occasionally operate a motor vehicle; is limited to no foot controls and no overhead reaching; is limited to

performing simple, routine, and repetitive tasks, but not at a production rate pace, for example, no assembly line work; is limited to simple work-related decisions; is limited to working in crowds of five people or less; is limited to tolerating few changes in the work setting (routine job duties that remain static and are performed in a stable, predictable work setting, with infrequent changes that are easily and adequately explained); limited to a sit/stand option each hour to change position for two minutes while remaining on task for 95% of the workday. (Tr. 62-63). The VE testified such an individual could not perform Ms. Querin's past relevant work and could not perform other work. (Tr. 63).

Under the same hypothetical conditions, but without the sit/stand option, the hypothetical individual could not perform Ms. Querin's past relevant work but could perform other work, including as a cook/helper, a hand packager, and a hospital cleaner. (Tr. 64-66).

The VE testified that, at the light exertion level and under the same original hypothetical conditions, the hypothetical individual could not perform Ms. Querin's past relevant work but could perform other work, including as a welding machine feeder, a small products assembler, and a paper sorter and counter. (Tr. 67-68).

The VE also testified to an employer's tolerances. An employer will tolerate an employee being no more than 10% off task outside of regularly scheduled breaks and less than one day a month absent from work. (Tr. 69). The Dictionary of Occupational Titles does not address "repetitive work" but does address performing simple, routine work "which is considered repetitive in the sense that you're not doing more than a couple of things during the course of the workday. Your job does not change from one day to the next." (Tr. 71).

5

### III.    Relevant Medical Evidence[1]

Ms. Querin reports suffering childhood abuse at the hands of a family member. (Tr. 521). She did not engage in specialized mental health treatment; rather, the record contains statements she made to her primary care physician, Paul Bruner, D.O., about her symptoms related to PTSD. In June 2018, Ms. Querin expressed having panicky episodes and feelings of increased anxiety over her job. (Tr. 481-82). In July 2018, Ms. Querin complained of anxiety and having occasional outbursts, explaining that her job—customer service with HSN—triggers symptoms of PTSD. (Tr. 476). She stated that some customers were generally abusive and used sexually charged language. (*Id.*). She expressed resistance to seeking a new counselor. (*Id.*).

In October 2019, Ms. Querin returned to Dr. Bruner's office and complained of feeling anger without reason, and anxiety and despair over her low-income status and inability to work. (Tr. 533). She explained that she fights sleep and will not sleep in a bed because her childhood abuse occurred at night in bed. (*Id.*).

### IV.    Medical Opinions

On October 15, 2019, Dr. Bruner noted Ms. Querin's extensive history of anxiety and sleep disturbances over past abuse. (Tr. 534). He opined that these were her greatest disabling factors and that he considered Ms. Querin disabled. (*Id.*). The ALJ found this opinion unpersuasive because "it is not consistent with or supported by the medical record." (Tr. 31). The

---

[1] Ms. Querin claims the ALJ erred by crafting a residual functional capacity that did not adopt all the consultative examiner's purported functional limitations with respect to Ms. Querin's mental impairments. (Pl.'s Br., ECF #13, PageID 612). As such, she waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). Therefore, I do not address the medical records related to Ms. Querin's physical impairments.

ALJ also noted that Dr. Bruner's opinion, that Ms. Querin is disabled, is a determination reserved for the Commissioner. (*Id.*).

In February 2019, Ms. Querin met with Andria Doyle, Ph.D., a clinical psychologist, for a consultative examination. (Tr. 520-27). Dr. Doyle provided the following assessment of Ms. Querin's functional abilities. As to Ms. Querin's ability to understand, remember, and carry out instructions, Ms. Querin did not demonstrate significant impairments during the evaluation, though her performance on examination did suggest deficits in remembering. (Tr. 526). She noted Ms. Querin was generally able to maintain attention during the interview with some distractibility, suggesting deficits in attention, and that "there appeared to be current limitations to perform simple tasks and multi-step tasks, such as activities of daily living (e.g., eating, bathing)." (*Id.*). Dr. Doyle also noted Ms. Querin did not indicate significant interactional difficulties with supervisors or coworkers. (*Id.*). Finally, Dr. Doyle concluded that Ms. Querin "may respond quite negatively to perceived pressures at work (e.g., become easily overwhelmed, tearful, have difficulty completing complex tasks that require sustained attention or memory)." (*Id.*).

The ALJ determined "the limitations suggested by this source are persuasive and accounted for by the adopted residual functional capacity because they are consistent with the nature, scope, and findings from the treatment record, and they are supported by evidence in the record." (Tr. 31).

State agency psychiatric consultants reviewed Ms. Querin's medical records at the initial and reconsideration levels of the administrative review. (Tr. 75-112). At the initial level, the consultant reviewed medical records, including Dr. Doyle's consultative examination, and determined Ms. Querin was not limited in her ability to understand, remember, or apply

7

information, but was moderately limited in her abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (Tr. 85). The consultant performed a mental residual functional capacity ("RFC") assessment and concluded Ms. Querin retained the ability to perform 3-4 step tasks with adequate past, persistence, and concentration under ordinary levels of supervision; cope with brief superficial interactions with coworkers and supervisors in non-public work settings; and adapt and manage herself in a structured and predictable work setting where changes can be easily explained. (Tr. 90). On reconsideration, the consultant affirmed the initial consultant's mental residual functional capacity because the record did not contain evidence of a change or worsening in psychiatric functioning since the initial evaluation. (Tr. 109).

The ALJ found the state agency psychological consultants' opinions persuasive because "they are consistent with the nature, scope, and findings from the treatment record, and they are supported by evidence of the record that shows [Ms. Querin] had severe mental health impairments." (Tr. 30).

V.  **OTHER RELEVANT EVIDENCE**

In November 2018, Ms. Querin completed an Adult Function Report detailing how her conditions limit her activities. (Tr. 238-45). Relevant to her mental impairments, Ms. Querin alleges she has trouble with concentration, is distracted easily, does not complete tasks, does not stay focused, is unable to trust others (especially men), prefers to be invisible, and has a challenging time handling situations and responsibility. (Tr. 238). She described crying spells, feeling scared, and expressed a fear of being in the dark. (Tr. 258).

Ms. Querin described her daily routine to include waking up, dressing, running errands, listening to music, making dinner, doing crafts, watching television, and sometimes napping during the day. (Tr. 239). She has difficulty sleeping at night and experiences vivid nightmares that are difficult to wake up from. (*Id.*). Ms. Querin takes Klonopin and Lexapro for symptoms, both of which cause drowsiness. (Tr. 245).

Ms. Querin can follow written instructions "pretty well," but not spoken instructions. (Tr. 243). She does not handle stress or changes in routine well. When stressed, "everything is magnified ten times." (Tr. 244).

## THE ALJ'S DECISION

The ALJ's decision, dated January 2, 2020, included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through January 30, 2023.

2. The claimant has not engaged in substantial gainful activity since July 30, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy; depression; PTSD; anxiety; and history of right shoulder arthroscopy with supraspinatus rotator cuff repair (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch, but never crawl. She can occasionally operate a motor vehicle. She is limited to no foot controls. She is limited to no overhead reaching. She is

> also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work; she is limited to simple work-related decisions, and she cannot work in crowds greater than 5 people. She is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 9, 1965 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2018, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 21-33).

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports

11

the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age,

12

education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Ms. Querin claims the ALJ failed to reconcile the mental RFC with the opinion from the consultative examiner related to stress and performing simple tasks. (Pl.'s Br., ECF #13, PageID 612). She contends the ALJ, having found Dr. Doyle's opinion persuasive, erred by omitting some of Dr. Doyle's suggested limitations in the RFC or not explaining why the limitations were not adopted. (*Id.* at 612-13). More specifically, Ms. Querin takes issue with the RFC's limitation to simple, routine tasks where Dr. Doyle "opined Ms. Querin would have limitations performing simple tasks." (*Id.* at 613-14). Ms. Querin also contends the ALJ did not adequately account for Dr. Doyle's opinion regarding her stress. (*Id.* at 614).

The Commissioner responds that Dr. Doyle's opinion does not contradict the RFC, but rather, supports it. (Comm'r's Br., ECF #14, PageID 622). Moreover, the Commissioner contends the statements Ms. Querin relies on from Dr. Doyle's report are insufficient to establish functional restrictions. (*Id.*).

An individual's RFC is the most that a person can do despite her limitations and is based on all relevant evidence in the case record. 20 C.F.R. § 404.1545. The determination of an individual's RFC is an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d). It is well-established that an ALJ need not adopt the limitations from medical source opinions verbatim. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Nevertheless, where an ALJ

determines a medical source opinion is persuasive, the ALJ must incorporate the limitation in that finding or provide a sufficient explanation for declining to do so. *Slone v. Comm'r of Soc. Sec.*, No. 2:20-cv-4850, 2021 WL 4901498, at *5 (S.D. Ohio Oct. 21, 2021) (citing *Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-CV-58, 2020 WL 240812, at *2 (S.D. Ohio Jan. 16, 2020).

Ms. Querin contends Dr. Doyle's statement that "[t]here appeared to be current limitations to perform simple tasks and multi-step tasks, such as activities of daily living (e.g., bathing, eating)" (Tr. 526) is an opinion that Ms. Querin would not be able to perform even simple tasks. (*See* Pl.'s Br., ECF #13, PageID 613) ("Dr. Doyle opined the following of [Ms. Querin's] functional limitations: Plaintiff had limitations performing simple tasks and multi-step tasks, such as activities like eating and bathing"). This is an inaccurate characterization of Dr. Doyle's statement; her report does not state Ms. Querin is *restricted from* performing simple and multi-step tasks, like eating and bathing, but that she has *limitations in* her ability to perform such tasks. Earlier in her report, Dr. Doyle noted Ms. Querin affirmatively stating she cooks on a daily basis and bathes herself twice weekly. (Tr. 523). In sum, Dr. Doyle's quoted statement cannot be fairly read to suggest Ms. Querin is restricted from performing tasks that she affirmatively states she can, and does, perform.

Dr. Doyle's statement, viewed properly as a limitation on performing simple tasks, is incorporated into the ALJ's RFC assessment. Therefore, Ms. Querin has not identified an error requiring remand.

Ms. Querin also argues the ALJ did not properly account for Dr. Doyle's opinion regarding Ms. Querin's responses to stress. (Pl.'s Br., ECF #13, PageID 614). Dr. Doyle's report provided a

14

functional assessment of Ms. Querin's ability to respond appropriately to work pressures in a work setting. Her assessment stated:

> She did report or demonstrate psychological symptoms that would likely interfere with work-related stress tolerance abilities. Specifically, [Ms. Querin] presents with posttraumatic stress disorder with panic attacks secondary to childhood sexual abuse. She presents with depressive symptoms that have persisted throughout her lifetime and that are currently moderate in severity. She presents with a recent acute dissociative reaction to stress. [Ms. Querin] noted a history of difficulty handling stress appropriately (e.g., experiencing panic attacks in response to stress). She may respond quite negatively to perceived pressures at work (e.g., become easily overwhelmed, tearful, have difficulty completing complex tasks that require sustained attention or memory).

(Tr. 526).

Dr. Doyle's assessment of Ms. Querin's ability to respond to stress does not conclude Ms. Querin is unable to function in a work setting in response to stress, only that Ms. Querin may respond negatively to workplace stress. Thus, Ms. Querin's contention that this statement in Dr. Doyle's opinion renders her unable to work at all is a mischaracterization of the report. Moreover, an ALJ does not commit error by failing to incorporate vague assertions. *See Graham v. Comm'r of Soc. Sec.*, No. 1:18-CV-1939, 2019 WL 4451366, at *5 (N.D. Ohio Sept. 17, 2019) (finding no violation where the ALJ failed to explain why he did not adopt specific limitations because, *inter alia*, the at-issue limitations "were not definitive as they indicated that Plaintiff '*may* require some repetition' as to instructions and '*may*' need assistance in making independent decisions regarding work goals"); *Silvka v. Berryhill*, No. 1:17-CV-01076, 2018 WL 3340388, at *9 (N.D. Ohio May 29, 2018), *report and recommendation adopted*, 2018 WL 3336461 (N.D. Ohio July 5, 2018) ("To treat the *possible* limitations floated by Dr. Matyi as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion."); *Mosley v. Berryhill*, No. 1:13-0055, 2017 WL 1153896, at *10 (M.D. Tenn. Mar. 28, 2017) (an assessment of

15

"difficulty" with an activity "does not constitute a definitive functional limitation that the ALJ was required to incorporate into the RFC").

Finally, the Commissioner argues the ALJ's RFC did incorporate limitations to address Ms. Querin's poor stress tolerance and adaptability: "limited to performing simple, routine and repetitive tasks, but not at a production rate pace," "limited to simple work-related decisions," "cannot work in crowds greater than 5 people," "limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting," and "necessary changes need to occur infrequently, and be adequately and easily explained." (Comm'r's Br., ECF #14, PageID 623). Absent any meaningful argument to the contrary, I find the ALJ adequately accounted for Dr. Doyle's statement that Ms. Querin may respond negatively to workplace stress by including those limitations in the RFC.

CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB supported by substantial evidence and recommends the decision be affirmed.

Dated: November 29, 2021

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

16